UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FRED NEKOUEE, individually,                    :
                                               :
                Plaintiff,                     :
                                               :
vs.                                            :  Case No. 4:18-cv-00939
                                               :
MID AM FOOD ENTERPRISES, INC.,                 :
a Missouri corporation;                        :
                                               :
PAN KANSAS LLC, a Delaware limited liability   :
company;                                       :
                                               :
and                                            :
                                               :
BRE RETAIL RESIDUAL MO OWNER LLC,              :
a Delaware limited liability company;          :
                                               :
                Defendants.                    :
_____/

## <u>COMPLAINT</u>
### (Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendants, MID AM FOOD ENTERPRISES, INC., a Missouri corporation; PAN KANSAS LLC, a Delaware limited liability company; and BRE RETAIL RESIDUAL MO OWNER LLC, a Delaware limited liability company (sometimes referred to as "Defendants"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.     Defendant BRE RETAIL RESIDUAL MO OWNER LLC's property, the Watts Mill Plaza, is located at and near 1030 West 103rd Street, Kansas City, Missouri 64114, in Jackson County ("Watts Mill Plaza").

3.     Defendant MID AM FOOD ENTERPRISES, INC.'s place of public accommodation, the PRICE CHOPPER, is located in the Watts Mill Plaza ("PRICE CHOPPER").

4.     Defendant PAN KANSAS LLC's place of public accommodation, Panera Bread, is located in the Watts Mill Plaza ("Panera").

5.     Venue is proper in the Western District of Missouri because the situs of the property and places of public accommodation lie in this judicial district.   The Defendants' properties and places of public accommodation are located in and do business within this judicial district.

6.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

7.     Defendant BRE RETAIL RESIDUAL MO OWNER LLC, owns, leases, leases to, or operates a place of public accommodation (shopping center) as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant BRE RETAIL RESIDUAL MO OWNER LLC is responsible for complying with the obligations of the ADA.

8.     The place of public accommodation that the Defendant BRE RETAIL RESIDUAL MO OWNER LLC owns, operates, leases or leases to is known as the Watts Mill Plaza.

9.     Defendant MID AM FOOD ENTERPRISES, INC. owns, leases, leases to, or operates a place of public accommodation (grocery store) as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

Defendant MID AM FOOD ENTERPRISES, INC. is responsible for complying with the obligations of the ADA.

10. The place of public accommodation that the Defendant MID AM FOOD ENTERPRISES, INC. owns, operates, leases or leases to is known as "PRICE CHOPPER" in the Watts Mill Plaza.

11. Defendant PAN KANSAS LLC owns, leases, leases to, or operates a place of public accommodation (restaurant and bakery) as defined by the ADA, 42 U.S.C. § 12181(7)(B) and (E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant PAN KANSAS LLC is responsible for complying with the obligations of the ADA.

12. The place of public accommodation that the Defendant PAN KANSAS LLC owns, operates, leases or leases to is known as "Panera" in the Watts Mill Plaza.

13. Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA. Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

14. Mr. Nekouee travels to the Kansas City area every three to six months to accompany his brother at heavy equipment auctions or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his cousin or his uncle who both live in the area.

15. Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Watts Mill Plaza which forms the basis of this lawsuit on July 11, 2018 and on July 12, 2018, 2018, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment auction and heavy equipment

3

dealerships he visits in the Kansas City area, close to the home of his uncle and cousin, and close to the hotels he stays at in the area.

16.     Fred Nekouee has definite plans to return to the Kansas City area and the Watts Mill Plaza in January of 2109.

17.     Mr. Nekouee likes to buy groceries at grocery chains like PRICE CHOPPER to take back to his hotel room.   He would like to return to the PRICE CHOPPER at the Watts Mill Plaza.

18.     Fred Nekouee bought goods at the PRICE CHOPPER in the Watts Mill Plaza on July 12, 2018.

19.     Fred Nekouee really enjoys the food and drinks at Panera, and since it is a chain restaurant, he generally knows the menu.   He would like to return to this Panera.

20.     Fred Nekouee bought a meal at Panera on July 11, 2018.

21.     The PRICE CHOPPER and Panera at the Watts Mill Plaza are close to the hotels he stays at in the area.

22.     Plaintiff Fred Nekouee has visited the Kansas City area near the Watts Mill Plaza in March 2018; July 2018; and September 2018.

23.     For the reasons set forth in paragraphs 14-22 and 33, Mr. Nekouee plans to return to the Watts Mill Plaza.

24.     The Plaintiff has encountered architectural barriers at the subject property and places of public accommodation.   The barriers to access that the Plaintiff encountered at the property and places of public accommodation have endangered his safety in his wheelchair, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, access aisles and walking surfaces, impaired his use of the men's and women's restrooms

4

in PRICE CHOPPER and Panera, have impaired his access to the goods and services at PRICE CHOPPER and Panera, and have deterred him from trying to access other stores at the Watts Mill Plaza.

25.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

26.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

27.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

28.     On his visits to the Watts Mill Plaza, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles, and walking surfaces (including sidewalks).

29.     The Plaintiff also encountered barriers to access to and in the men's and women's restrooms in PRICE CHOPPER and Panera.

30.     The Plaintiff is deterred from visiting the Watts Mill Plaza even though he enjoys its goods and services at such places of public accommodation as PRICE CHOPPER and Panera, because of the difficulties he will experience at the shopping center until the property is made accessible to him in a wheelchair.

31.     The Plaintiff is deterred from visiting other stores in the Watts Mill Plaza, even though the shopping center is close to the hotels he stays in when he visits the area because of the difficulties he will experience at the Watts Mill Plaza in the parking lot, access aisles, and walking surfaces, until the property is made accessible to him in a wheelchair.

32.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 37 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

33.     Fred Nekouee desires to visit the Watts Mill Plaza, PRICE CHOPPER, and Panera not only to avail himself of the goods and services available at the property and places of public accommodation but to assure himself that this property and places of public accommodation are in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property and places of public accommodation without fear of discrimination.

34.     The Defendants have discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

35.     The Plaintiff Fred Nekouee is expressly authorized to bring this action under 42 U.S.C § 12188(a).

36.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

37.     Preliminary inspections of the Watts Mill Plaza, the PRICE CHOPPER, and Panera show violations and existing barriers to access.   The violations that Fred Nekouee personally encountered or observed on his visits to the Watts Mill Plaza include, but are not limited to:

6

**PARKING AREA**

a.  In the parking lot, as shown in the photographs below, there is no marked access aisle for the parking spaces for disabled patrons in front of PRICE CHOPPER, in violation of Federal Law 2010, ADAAG §§ 502.1 and 502.3.3.   The Plaintiff encountered the lack of an access aisle, and it made it very difficult for him to unload from and load back into his vehicle at PRICE CHOPPER.







8





b. In the parking lot, there is no marked access aisle for the parking spaces for disabled patrons in front of Cacao Mexican Restaurante, in violation of Federal Law 2010, ADAAG §§ 502.1 and 502.3.3. The Plaintiff observed this lack of an access aisle, and it deters him

from visiting the Watts Mill Plaza.

c.    In the parking lot, the front section of the parking space for disabled patrons in front of Panera is not even and has a running slope as steep as about 1:14.5 (6.9%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered these conditions, and they made him unstable in his wheelchair.

d.    The running slope of the walking surface from the parking access aisle to Great Clips and Panera is as steep as about 1:11.8 (8.5%), which slope is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010, ADAAG § 403.3. The Plaintiff encountered this running slope, and it made him unstable while moving in his wheelchair.

e.    In the parking lot, the accessible parking space access aisle in front of Southside Bar & Grill is not even and its cross slope is as steep as about 1:19.6 (5.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting the Watts Mill Plaza.

f.    In the parking lot, the access aisle in front of Panera has a change of level and its cross slope is as steep as about 1:27 (3.7%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this cross slope in this access aisle, and it made him unstable while moving in his wheelchair.

g.    The running slope of the walking surface towards the accessible ramp of Great Clips and Panera is as steep as 1:16.7 (6%), which slope is steeper than the maximum

10

allowed slope of 1:20 (5%), in violation of Federal Law 2010, ADAAG § 403.3. The Plaintiff encountered this running slope, and it made him unstable while moving in his wheelchair.

h.    The ramp top landing in front of Great Clips and Panera has a slope as steep as about 1:21.3 (4.7%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.   The Plaintiff encountered this ramp top landing, and its slope made him unstable while moving in his wheelchair.

i.    The running slope of the accessibility ramp in front of Great Clips and Panera is as steep as about 1:10.4 (9.6%), which slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff encountered the steep slope of this accessibility ramp, and he required assistance to move up this ramp in his wheelchair.

**PANERA ENTRANCE DOOR**

j.    The force needed to open the entrance door to Panera is about 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Fred Nekouee, in his wheelchair, required assistance to open this entrance door and to enter Panera.

**MEN'S RESTROOM--PANERA**

k.    The force needed to open the entrance door to the men's restroom in Panera is about 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Fred Nekouee, in his wheelchair, required

11

assistance to open this entrance door and to enter the men's restroom in Panera.

l. In the men's restroom in Panera, the door pull side maneuvering clearance space in a front approach beyond the latch and parallel to the doorway is less than the minimum clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4. This maneuvering clearance space is blocked by a trash can. To allow Fred Nekouee to access the restroom, a disabled individual who requires a wheelchair for mobility, trash cans must not be placed in such maneuvering clearance space. Fred Nekouee encountered this barrier to access in the men's restroom.

m. In the men' restroom in Panera, the urinal rim is about 19 inches above the finish floor, which height is higher than the maximum allowed height of 17 inches above the finish floor and the toilet is not accessible, in violation of Federal Law 2010, ADAAG § 605.2. The Plaintiff observed these conditions.

n. In the men's restroom in Panera, the toilet paper dispenser is outside the reach range of an individual in a wheelchair. The dispenser centerline is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of federal law 2010, ADAAG § 604.7. As a result of this condition, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

o. In the men's restroom in Panera, the distance from the toilet centerline to the side wall is about 19.5 inches and not between a minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm), in violation of Federal Law 2010, ADAAG § 604.2. The Plaintiff encountered this condition, and it made it difficult for him to reach the grab bar and he could not reach the toilet paper from a normal sitting position on the toilet.

p. In the men's restroom in Panera, the paper towel dispenser outlet and its motion

sensor effective range are more than a maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1. Due to these conditions, the Plaintiff could not use the paper towel dispenser.

q. In the men's restroom in Panera, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3. The Plaintiff observed this condition.

r. In the men's restroom in Panera, the toilet does not have the flush control mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6. Due to the location of the flush control, the Plaintiff could not flush the toilet on his own.

s. In the men's restroom in Panera, the coat hook is installed at about 56 inches above the finish floor and above the maximum allowed reach height of 48 inches, in violation of Federal Law 2010, ADAAG § 603.4. From his wheelchair, the Plaintiff could not reach this hook to use it.

t. In the men's restroom in Panera, the liquid soap dispenser handle is mounted at about 52 inches above the finish floor and above the maximum allowed reach height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2. The Plaintiff tried but could not reach the dispenser to the liquid soap from his wheelchair.

**WOMEN'S RESTROOM IN PANERA**

u. The force needed to open the entrance door to the women's restroom in Panera is about 15 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. Fred Nekouee, in his wheelchair, required

assistance to open this entrance door and to enter the women's restroom in Panera.

v.   The accessible toilet compartment door pull in the women's restroom in Panera is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   Due to this condition, the Plaintiff could not fully close this door.

w.    In the women's restroom in Panera, the paper towel dispenser handle is about 52 inches above the finish floor and outside the reach range of an individual in a wheelchair of a maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAAG § 308.2.1.   Due to its height above the floor, the Plaintiff could reach the handle to use the paper towel dispenser.

x.   In the women's restroom in Panera, the flush control on the toilet is not mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6.   Due to the location of the flush control, the Plaintiff could not flush the toilet.

y.    The coat hook in the women's restroom in Panera is installed at about 55 inches above the finish floor and higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   Due to its height above the floor, the Plaintiff could not use this coat hook.

z.    In the women's restroom in Panera, the liquid soap dispenser is mounted at about 51 inches above the finish floor and higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   The Plaintiff could not reach the dispenser to get soap.

**MEN'S RESTROOM—PRICE CHOPPER**

aa.    As shown in the photograph below, the men's restroom in PRICE CHOPPER

14

does not have the signage and international symbol of accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1. The Plaintiff observed this condition, and it deters him from shopping at PRICE CHOPPER.



bb.    In PRICE CHOPPER, the men's restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is about 9.5 inches and less than the required minimum clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4. The Plaintiff encountered this lack of maneuvering clearance space, and it made it very difficult for him to open the door to the men's restroom in his wheelchair.

cc.    In the men's restroom in PRICE CHOPPER, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal

Law 2010, ADAAG § 604.8.1.2. Due to the lack of such a door pull, the Plaintiff could not fully close the door to this toilet compartment.

dd. In the men's restroom in PRICE CHOPPER, the accessible stall is about 40 inches wide and less than the minimum required width of 60 inches for a wheelchair accessible compartment, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3. As a result of the narrow width of this stall, the Plaintiff required assistance to position himself to use the toilet.

ee. In the men's restroom in PRICE CHOPPER, the space underneath the sink is blocked by a trash bin with an the opening to the trash bin in the countertop to the sink, and, as a result, knee and toe clearance is not provided under the sink to allow a forward approach to the sink by an individual in a wheelchair, in violation of Federal Law 2010, ADAAG §§ 305 and 306.2.3. Due to the trash bin, the Plaintiff could not make a forward approach to the sink in his wheelchair.

ff. In the men's restroom in PRICE CHOPPER, the urinal rim is 19 inches above the finish floor and higher than the maximum allowed height of 17 inches above the finish floor, and an accessible toilet compartment is not provided, in violation of Federal Law 2010, ADAAG § 605.2. The Plaintiff observed this condition.

gg. In the men's restroom in PRICE CHOPPER, the distance from the toilet centerline to the side wall is about 22 inches and not between a minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm), in violation of Federal Law 2010, ADAAG § 604.2. Due to the distance from the toilet centerline to the side wall, the Plaintiff had great difficulty trying to reach the toilet paper.

hh. In the men's restroom in PRICE CHOPPER, the paper towel dispenser is about

50 inches above the finish floor and the sensor does not detect motion at two inches away, which dispenser is effectively outside the reach range of an individual in a wheelchair with a maximum reach height of 48 inches above the finish floor, in violation of federal Law 2010, ADAAG § 308.2.1. From his wheelchair, the Plaintiff could not get an additional paper towel from the dispenser once he tore off a part of a paper towel that was hanging down from the last user.

ii. In the men's restroom in PRICE CHOPPER, the water closet compartment is not wide enough, and the flush control is not mounted on what should be the open and wide side of the clear floor space in the toilet compartment, in violation of Federal Law 2010, ADAAG § 604.6. Due to the location of the flush control on the toilet, the Plaintiff required assistance to flush the toilet.

jj. The coat hook in the men's restroom in PRICE CHOPPER is installed at about 54 inches above the finish floor and higher than the maximum reach height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4. Due to its height above the floor, the Plaintiff could not use this coat hook.

**WOMEN'S RESTROOM—PRICE CHOPPER**

kk. The force needed to open the entrance door to the women's restroom in PRICE CHOPPER is about 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. Fred Nekouee, in his wheelchair, required assistance to open this entrance door and to enter the women's restroom in PRICE CHOPPER.

ll. As shown in the photograph below, the women's restroom in PRICE CHOPPER

17

does not have the signage and international symbol of accessibility, in violation of Federal

Law 2010, ADAAG § 703.7.2.1.   The Plaintiff observed this lack of signage.



       mm.      In the women's restroom in PRICE CHOPPER, the restroom door pull side

maneuvering clearance in a front approach beyond the latch and parallel to the doorway is

about 9 inches and less than the minimum required clearance of 18 inches, in violation of

Federal Law 2010, ADAAG § 404.2.4.   In his wheelchair, the Plaintiff required assistance

to exit the women's restroom in PRICE CHOPPER due to this lack of maneuvering

clearance space.

nn.   In the women's restroom in PRICE CHOPPER, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   Once inside the toilet compartment, the Plaintiff could not fully close the door to the compartment due to the lack of a door pull on the inside of the door.

oo.   In the women's restroom in PRICE CHOPPER, the accessible stall is about 40 inches wide and less than the minimum required width of 60 inches for a wheelchair accessible compartment, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3. As a result of the narrow width of this stall, the Plaintiff required assistance to position himself to use the toilet.

pp.   In the women's restroom in PRICE CHOPPER, the rear wall grab bar only extends about 18 inches from the centerline of the water closet and does not extend a minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side, in violation of Federal Law 2010, ADAAG § 604.5.2.   The position of the rear wall grab bar made it very difficult for the Plaintiff to transfer from his wheelchair to the toilet.

qq.   In the women's restroom in PRICE CHOPPER, the side wll grab bar only extends about 50 inches from the rear wall and it does not extend a minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   Due to this condition, the Plaintiff had great difficulty transferring from the toilet back to his wheelchair.

rr.   In the women's restroom in PRICE CHOPPER, the sink does not have the clear floor or ground space underneath the sink to provide knee and toe clearance since such space is blocked by a trash bin, which lack of clearance does not allow a forward approach

to the sink by an individual in a wheelchair, in violation of Federal Law 2010, ADAAG §§ 305 and 306.2.3. The Plaintiff encountered this condition, and due to the lack of knee and toe clearance, he had great difficulty using the sink.

ss. At the entrance to the women's restroom in PRICE CHOPPER, the cross slope of the walking surface is as steep as about 1:21.3 (4.7%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG 403.3. Due to this slope, the Plaintiff slipped sideways in his wheelchair at the entrance to the women's restroom in PRICE CHOPPER.

tt. In the women's restroom in PRICE CHOPPER, the space between the rear wall grab bar and the toilet seat cover dispenser above it is about 4 inches and less than the required minimum gap of 12 inches, in violation of Federal Law 2010, ADAAG § 609.3. Due to the location of the toilet seat cover dispenser near the rear wall grab bar, the Plaintiff had even more difficulty using the rear wall grab bar to transfer himself from his wheelchair to the toilet.

uu. In the women's restroom in PRICE CHOPPER, the horizontal distance from the toilet centerline to the side wall is about 20.5 inches and not between the required minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm), in violation of Federal Law 2010, ADAAG § 604.2. This condition made it very difficult for the Plaintiff to try to use the toilet paper dispenser.

vv. In the women's restroom in PRICE CHOPPER, the paper towel dispenser is about 51 inches above the finish floor and the sensor does not detect motion at two inches away, which dispenser is effectively outside the reach range of an individual in a wheelchair with a maximum reach height of 48 inches above the finish floor, in violation

of federal Law 2010, ADAAG § 308.2.1. From his wheelchair, the Plaintiff could not use this paper towel dispenser.

ww.    In the women's restroom in PRICE CHOPPER, the water closet compartment is not wide enough, and the flush control is not mounted on what should be the open and wide side of the clear floor space in the toilet compartment, in violation of Federal Law 2010, ADAAG § 604.6. Due to the location of the flush control on the toilet, the Plaintiff required assistance to flush this toilet.

xx.    In the women's restroom in PRICE CHOPPER, the coat hook is installed at about 56 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4. The Plaintiff observed this condition.

38.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

39.    The discriminatory violations described in paragraph 37 are not an exclusive list of the Defendants' ADA violations. Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation to determine all of the areas of non-compliance with the Americans with Disabilities Act.

40.    The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and its facilities, and have otherwise been discriminated against and damaged by the

Defendants because of the Defendants' ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

41.     Defendants have discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

42.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

43.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

44.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

45.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been

an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

46.    Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

47.    Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendants to alter the Watts Mill Plaza and adjacent parking lot spaces, PRICE CHOPPER, and Panera, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

48.   Millions of Americans require the use of a wheelchair for mobility.

49.   The number of wheelchair users increases in the United States every year due in part to the aging of the baby boomer generation.

50.   Removing existing architectural barriers to access pursuant to Title III of the ADA will be good for business at the Watts Mill Plaza.

**WHEREFORE,** Plaintiff respectfully requests:

23

a. That the Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b. Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d. Such other relief as the Court deems just and proper, and is allowable under Title III of the Americans with Disabilities Act.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: November 27, 2018.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*